IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DUANE BAXTER,                          )
                                       )
                   Petitioner,         )    C.A. No. 08-91 Erie
                                       )
         v.                            )
                                       )    Chief Magistrate Judge Baxter
WARDEN QUINTANA,                       )
                                       )
                   Respondent.         )

# MEMORANDUM OPINION[1]

## I.  Introduction

Petitioner, Duane Baxter, is a federal inmate currently incarcerated at the Federal Correctional Institution ("FCI") McKean.  He is serving a 63-month sentence for Possession With Intent to Distribute Cocaine Base, in violation of 21 U.S.C. § 841(a)(1), which was imposed in January 2006.  His projected release date is June 5, 2009, assuming he receives all good conduct time available.

Petitioner has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 in which he contends that the Bureau of Prisons (the "Bureau" or the "BOP") has wrongfully denied him eligibility for a sentence reduction for his successful completion of a drug treatment program under 18 U.S.C. § 3621(e)(2)(B). He asserts that the regulation that the Bureau applied to him to deny him early release – 28 C.F.R. § 550.58(a)(1)(vi)(B) (2000) – is invalid because it was not promulgated in accordance with the Administrative Procedure Act ("APA").  Specifically, he claims that: (1) the Bureau promulgated the regulation in violation of the APA's notice-and-comment procedures, set forth at 5 U.S.C. § 553; and, (2) the Bureau's alleged failure to state a rationale for promulgating the regulation renders it arbitrary and capricious, in violation of 5 U.S.C. § 706(2)(A).  (See *Petition*, Docket No. 1; *Addendum to Petition*, Docket No. 3; *Reply*, Docket No.

---

[1]  In accordance with the provisions of 18 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including entry of a final judgment. (Docket No. 4; Docket No. 10).

1

9). The Bureau has submitted its *Response* at Docket No. 7.

### A. Relevant Statutory and Regulatory Background

18 U.S.C. § 3621 governs the imprisonment of persons convicted of federal crimes. In 1990, Congress amended the statute to provide that "[t]he Bureau shall … make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse." Pub.L. 101-647, § 2903, 104 Stat. 4913. Four years later, on September 13, 1994, Congress enacted the Violent Crime Control and Law Enforcement Act, Pub.L. 103-322, which amended the statute to provide incentives for inmate participation in Bureau substance abuse treatment programs. The incentive provision at issue is codified at 18 U.S.C. § 3621(e)(2)(B) and it reads:

> **Period of Custody.–** The period a prisoner convicted of a *nonviolent offense* remains in custody after successfully completing a treatment program *may be reduced* by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve.

(Emphasis added).

On May 25, 1995, the Bureau published regulations, effective June 26, 1995, to implement the early release incentive set forth at 18 U.S.C. § 3621(e)(2)(B), including a new regulation at 28 C.F.R. § 550.58. 60 Fed.Reg. 27692-95 (May 25, 1995). Congress did not define 18 U.S.C. § 3621(e)(2)(B)'s term "nonviolent offense," and in 28 C.F.R. § 550.58 the Bureau defined that term as the converse of a "crime of violence" under 18 U.S.C. § 924(c)(3).[2] 60 Fed.Reg. 27692 (May 25, 1995). 28 C.F.R. § 550.58 provided, in relevant part:

> An inmate who completes a residential drug abuse treatment program during his or her current commitment may be eligible for early release by a period not to exceed 12 months, in accordance with paragraph (a) of this section, unless the inmate is an INS detainee, a pretrial inmate, a contractual boarder (for example, a D.C., State, or military inmate), or eligible for parole, *or unless the inmate's current offense is*

---

[2] 18 U.S.C. § 924(c)(3) defines the term "crime of violence" as:

> an offense that is a felony and –
> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another; or,
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

2

> *determined to be a crime of violence as defined in 18 U.S.C. § 924(c)(3)*, or unless the inmate has a prior federal and/or state conviction for homicide, forcible rape, robbery, or aggravated assault.

(Emphasis added).

In July 1995, in an effort to further define the term "crime of violence" (and hence 18 U.S.C. § 3621(e)(2)(B)'s term "nonviolent offense"), the Bureau issued Program Statement 5162.02, Definition of Term, "Crimes of Violence" ("PS 5162.02"). Therein, the Bureau explained that its "definition includes broad statutory language, as well as a framework for determining which specific criminal offenses fall within the statutory definition." PS 5162.02, § 1. In Sections 7 through 11 of PS 5162.02, the Bureau listed the specific criminal offenses that were determined to be crimes of violence. Section 7 explicitly excluded from the category of "nonviolent" offenders eligible for early release those prisoners convicted under 18 U.S.C. § 922(g) (felon-in-possession of a firearm). Section 9 instructed that drug trafficking offenses under 21 U.S.C. § 841 and § 846 would be considered a crime of violence if the sentencing court increased the base level of the sentence for possession of a dangerous weapon during commission of the offense. The Bureau explained it was making this categorical exclusion because "possession of a dangerous weapon during commission of a drug offense poses a substantial risk that force may be used against persons or property." PS 5162.02, § 9.

After the Bureau's regulatory and program statement scheme went into effect, inmates proceeded to challenge PS 5162.02 on the basis that the Bureau was erroneously excluding them from receiving 18 U.S.C. § 3621(e)(2)(B)'s early release benefit even though they had been convicted of offenses that had not been regarded by federal courts to be "crimes of violence" under 18 U.S.C. § 924(c). See Lopez v. Davis, 531 U.S. 230, 235 (2001); see also Roussos v. Menifee, 122 F.3d 159, 161 (3d Cir. 1997). A split developed among the United States courts of appeals on the question of whether PS 5162.02 was valid or whether the Bureau was bound by the case law interpreting the definition of "crime of violence" found in 18 U.S.C. § 924(c). A majority of the courts of appeals determined that PS 5162.02 was invalid. Downey v. Crabtree, 100 F.3d 662 (9th Cir. 1996); Roussos, 122 F.3d at 161-64; Martin v. Gerlinski, 133 F.3d 1076 (8th Cir. 1998); Fristoe v. Thompson, 144 F.3d 627 (10th Cir. 1998); Byrd v. Hasty, 142 F.3d 1395 (11th Cir. 1998). The

3

Fourth and Fifth Circuits, however, upheld PS 5162.02. Pelissero v. Thompson, 170 F.3d 442 (4th Cir. 1999); Venegas v. Henman, 126 F.3d 760 (5th Cir. 1997). In Pelissero, the Fourth Circuit explained:

> As the district court appropriately recognized, Congress entrusted the decision whether to grant inmates early release under 18 U.S.C. § 3621(e)(2)(B) "solely to the discretion and expertise of the BOP, with a cautious eye toward the public safety and welfare." [Pelissero v. Thompson, 955 F.Supp. 634, 636 (N.D.W.Va.1997)]. In exercising this discretion, the Bureau of Prisons must balance Congress's twin goals of providing an incentive for certain prisoners to undergo drug treatment while at the same time protecting the public from potentially violent criminals. In its effort to carry out these goals, the Bureau of Prisons determined that a defendant will be excluded from the program if he has been convicted of a "crime of violence" as defined in 18 U.S.C. § 924(c)(3).… to implement this definition, the Bureau adopted P.S. 5162.02 which lists specific offenses that will be considered violent. The list includes a conviction or sentence enhancement for possession of a firearm in connection with the commission of a drug offense.
>
> While the Bureau of Prisons' definition of a crime of violence may not be consistent with court interpretations of 18 U.S.C. § 924(c)(3), it is, nevertheless, a permissible and reasonable interpretation of the statute from which the Bureau derived its authority. We agree with the Seventh Circuit's observation in Parsons:
>
>> Given the substantial risk of danger and the inherently violent nature of firearms, particularly firearms in the possession of a convicted felon, there is nothing unreasonable about the BOP's decision to classify a conviction for possession of a firearm by a felon as "a crime of violence in all cases" for purposes of determining an inmate's eligibility for early release.

170 F.3d at 447 (quoting Parsons v. Pitzer, 149 F.3d 734, 738 (7th Cir. 1998)).

Because of the split among the courts of appeals, the Bureau could not apply 28 C.F.R. § 550.58 (1995) and PS 5162.02 consistently in its institutions throughout the United States. To address this problem, the Bureau published a revised interim rule with the effective date of October 9, 1997 (the "1997 interim rule"), which amended 28 C.F.R. § 550.58 (1995) in a manner to "avoid[ ]" the legal problem identified by the majority of courts of appeals. 62 Fed.Reg. 53690 (Oct. 15, 1997) ("Because of differences in application of case law among the various Federal courts, a few crimes would not be clearly covered by the Bureau's definition [of the term 'crime of violence.']")

As with the previous regulatory and program statement scheme, the 1997 interim rule still categorically excluded inmates convicted of drug offense violations with sentence enhancements for possession of a weapon from receiving 18 U.S.C. § 3621(e)(2)(B)'s early release benefit.

4

Importantly, however, the 1997 interim rule did not order this exclusion by defining the statutory term "prisoner convicted of a nonviolent offense" under 18 U.S.C. § 3621(e)(2)(B) or 18 U.S.C. § 924(c)(3)'s cognate term "crimes of violence." 62 Fed.Reg. 53690 (Oct. 15, 1997); see also Lopez, 531 U.S. at 235. Instead, the 1997 interim rule relied upon "the discretion allotted to the Director of the Bureau of Prisons in granting a sentence reduction to exclude" such inmates. Id.; see also Lopez, 531 U.S. at 235. As the United States Supreme Court subsequently explained in Lopez:

> Drug traffickers who possess firearms when they engage in crimes were no longer characterized as "violent" offenders within the meaning of the statute, but they were bracketed, for sentence reduction purposes, with persons currently incarcerated for "nonviolent offense[s]" who in the past committed crimes qualifying as violent. The preconviction conduct of both armed offenders and certain recidivists, in the Bureau's view, "suggest[s] that they pose a particular risk to the public." Brief for Respondents 30.

Id. at 236.

The 1997 interim rule amended 28 C.F.R. § 550.58 (1995), in relevant part, as follows:

(a) *Additional early release criteria.*

    (1) *As an exercise of the discretion vested in the Director of the Federal Bureau of Prisons*, the following categories of inmates are not eligible for early release:
---
    (iv) Inmates who have a prior felony or misdemeanor conviction for homicide, forcible rape, robbery, or aggravated assault, or child sexual abuse offenses;
---
    (vi) Inmates whose current offense is a felony:

        (A) That has as an element, the actual, attempted, or threatened use of physical force against the person or property of another, or

        (B) *That involved the carrying, possession, or use of a firearm or other dangerous weapon or explosives (including any explosive material or explosive device)*, or

        (C) That by its nature or conduct, presents a serious potential risk of physical force against the person or property of another, or

        (D) That by its nature or conduct involves sexual abuse offenses committed upon children.

62 Fed.Reg. 53690-01 (Oct. 15, 1997); 28 C.F.R. § 550.58(a)(1)(iv), (vi) (1997) (emphasis added).[3]

---

[3] In October 1997, the Bureau also issued Program Statement 5162.04, Categorization Of Offenses, ("PS
(continued...)

5

On December 22, 2000, after a three year notice-and-comment period, the 1997 interim rule became final without change. 65 Fed.Reg. 80745 (Dec. 22, 2000). Once again, the Bureau explained that the amendment to 28 C.F.R. § 550.58 (1995) was made "to resolve" the "complication" that was identified by some federal courts in the Bureau's attempt to define 18 U.S.C. § 3621(e)(2)(B)'s term "prisoner convicted of a nonviolent offense" to exclude categorically some crimes that were deemed not to be "crimes of violence" under 18 U.S.C. § 924(c)(3). Id. Because the "varying interpretations of the regulation and caselaw" prevented the Bureau from "apply[ing] the regulation in a uniform and consistent manner[,]" the Bureau explained, it was finalizing the 1997 interim rule, and excluding certain inmates, such as inmates whose current offense is a felony "that involved the carrying, possession, or use of a firearm," not because such crimes were "violent crimes" under 18 U.S.C. § 924(c)(3), but pursuant to the Bureau's asserted discretion to prescribe additional early release criteria. Id.; see also id. at 80748 ("As for the concerns raised over the effects of differing circuit court decisions, by implementing [the amendment to 28 C.F.R. § 550.58 (1995)] we tried to address the concerns raised by various circuit courts of appeals.")

In the meantime, the courts of appeals once again divided, this time over whether the Bureau had the discretion to make the categorical exclusion set forth in 28 C.F.R. § 550.58(a)(1)(vi)(B) (1997 & 2000). The Tenth and Eleventh Circuits concluded that it did not. Ward v. Booker, 202 F.3d 1249 (10th Cir. 2000); Kilpatrick v. Houston, 197 F.3d 1134 (11th Cir. 1999). The Eighth and Ninth Circuit determined that it did. Bellis v. Davis, 186 F.3d 1092 (8th Cir. 1999); Bowen v. Hood, 202 F.3d 1211 (9th Cir. 2000). The Supreme Court granted *certiorari* in Bellis (*sub nom* Lopez v. Davis, 529 U.S. 1086 (2000)) to resolve the circuit split.

On January 10, 2001, the Supreme Court affirmed the judgment of the Eighth Circuit in Lopez v. Davis, 531 U.S. 230 (2001). In Lopez, the Bureau argued that 18 U.S.C. § 3621(e)(2)(B)

---

[3](...continued)
51602.04) to replace PS 5162.02. This new program statement provided a list of offenses that the Bureau deemed to be "crimes of violence" in all cases. Additionally, PS 5162.04 provided a list of offenses that the Director of the Bureau had determined, as an exercise of her discretion, would exclude an inmate from early release.

6

establishes two prerequisites for sentence reduction: conviction of a nonviolent offense and successful completion of drug treatment. 531 U.S. at 239. If those prerequisites are met, the Bureau contended, it "may, but also may *not*, grant early release." Id. (emphasis in original, internal quotations omitted). The Supreme Court further explained the Bureau's position:

> According to the Bureau, Congress simply "did not address how the Bureau should exercise its discretion within the class of inmates who satisfy the statutory prerequisites for early release." [Reply Brief] at 23. Because Congress left the question unaddressed, the Bureau maintains, the agency may exclude inmates either categorically or on a case-by-base basis, subject of course to its obligation to interpret the statute reasonably, see Chevron [U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 844 (1984)], in a manner that is not arbitrary or capricious, see 5 U.S.C. § 706(2)(A). In this instance, the Bureau urges, it has acted reasonably: Its denial of early release to all inmates who possessed a firearm in connection with their current offense rationally reflects the view that such inmates displayed a readiness to endanger another's life; accordingly, in the interest of public safety, they should not be released months in advance of completing their sentences.

Id. at 239-40.

The Supreme Court agreed with the Bureau's position. It held that: "In this familiar situation, where Congress enacted a law that does not answer 'the precise question at issue,' all we must decide is whether the Bureau, the agency empowered to administer the early release program, has filled the statutory gap 'in a way that is reasonable in light of the legislature's revealed design.'" Id. at 242 (quoting Nations-Bank of N.C., N.A. v. Variable Annuity Life Ins. Co., 513 U.S. 251, 257 (1995) (citing Chevron, 467 U.S. at 842)); citing Reno v. Koray, 515 U.S. 50, 61 (1995)). The Supreme Court then held that case-by-case decisionmaking by the Bureau on thousands of cases each year "could invite favoritism, disunity, and inconsistency[,]" and held that the Bureau is not required to "continually … revisit issues that may be established fairly and efficiently in a single rulemaking proceeding." Id. at 244 (internal quotation and citation omitted). It determined that "[t]he Bureau reasonably concluded [in promulgating 28 C.F.R. § 550.58(a)(1)(vi)(B)] that an inmate's prior involvement with firearms, in connection with the commission of a felony, suggests his readiness to resort to life-endangering violence and therefore appropriately determines the early release decision." Id.

Subsequent to Lopez, the Ninth Circuit decided two cases upon which Petitioner relies and which dealt with issues not addressed in Lopez. In Paulsen v. Daniels, 413 F.3d 999 (9th Cir.

7

2005), the Ninth Circuit held that the Bureau had violated the notice-and-comment requirements of the APA (codified at 5 U.S.C. § 553 (b) and (d)) in its promulgation of *the 1997 interim rule* because the rule had gone into effect immediately, instead of after a notice-and-comment period. Id. at 1004-08. It determined that the 1997 interim rule was therefore invalid and that inmates who were denied the early release benefit under that rule – as opposed to the final rule effectuated on December 22, 2000 (which had been subject to notice and comment) – were entitled to habeas relief.[4] Id. Because its holding was limited to supporting habeas relief to only those inmates that had been denied the early release benefit when the 1997 interim rule was in effect (October 9, 1997 through December 21, 2000), the reach of Paulsen is of course limited, since inmates challenging the Bureau's authority to deny them early release under 28 C.F.R. § 550.58(a)(1)(vi)(B) now are (and have been for years) subject to the final rule, which was finalized after notice and comment.

On February 20, 2008, the Ninth Circuit issued Arrington v. Daniels, 516 F.3d 1106 (9th Cir. 2008), which held that 28 C.F.R. § 550.58(a)(1)(vi)(B) was invalid under the APA for a separate reason. As set forth in more detail below, in Arrington, the Ninth Circuit ruled that the Bureau failed to state in the administrative record a rationale for promulgating the categorical exclusion contained in that regulation, and therefore it is "arbitrary and capricious" in violation of 5 U.S.C. § 706(2)(A) of the APA.

As a result of the Arrington decision, the national consistency that the Bureau sought to achieve by amending 28 C.F.R. § 550.58 (1995) has once again proved to be elusive. Petitioner has submitted to this Court a notice that the Bureau provided to inmates after the Ninth Circuit decided Arrington. (Docket No. 9, Petitioner's Ex. A). In that notice, the Bureau instructed that inmates who are currently housed in a Ninth Circuit institution, or who have completed the unit-based portion of a residential drug treatment program ("RDAP") in a Ninth Circuit institution, may seek

---

[4] In Lopez, the *amici curiae* urged reversal on the ground that the Bureau had violated the notice-and-comment requirements of the APA when it published the 1997 interim rule. The Supreme Court declined to address that issue because it had not been raised or decided below, or presented in the petition for *certiorari*. Lopez, 531 U.S. at 244 n.6.

reconsideration of early release eligibility in light of Arrington.[5] As of the date of the issuance of this *Memorandum,* no other court of appeal has invalidated 28 C.F.R. § 550.58(a)(1)(vi)(B) under 5 U.S.C. § 706(2)(A) of the APA or has issued a decision in which it had to decide whether it was in agreement with the Ninth Circuit's decision in Arrington.

### B. Relevant Factual Background

On or around May 29, 2007, Petitioner requested participation in FCI McKean's RDAP. FCI McKean staff determined that although Petitioner was eligible to participate in the RDAP, 28 C.F.R. § 550.58(a)(1)(vi)(B) precluded him from receiving 18 U.S.C. § 3621(e)(2)(B)'s early release benefit because his sentencing court had applied a two-point special offense characteristic enhancement for possessing a firearm during the commission of his convicted offense. (Ex.[6] 1, ¶ 4; Ex. 2b; Ex. 2c).

On June 22, 2007, Petitioner commenced the RDAP program at FCI McKean (which he completed on April 8, 2008). (Ex. 1c). He challenged the denial of early release by submitting a Request for Administrative Remedy to the Warden at FCI McKean.[7] (Ex. 1b at 1-2). After the Warden denied Petitioner's request for relief (Ex. 1b at 3), Petitioner filed an appeal with the Bureau's Northeast Regional Office. (Ex. 1b at 4). In a response dated October 22, 2007, that appeal was denied. (Ex. 1b at 5). Petitioner was instructed that if he was dissatisfied with the Regional Director's response, he could appeal to the Bureau's General Counsel. Petitioner did not pursue an appeal to the Bureau's General Counsel. In April 2008, he filed his petition for writ of habeas corpus with this Court.

### C. Subject Matter Jurisdiction

A challenge to a federal sentence *as imposed* must be made under 28 U.S.C. § 2255. A

---

[5] The Ninth Circuit consists of Alaska, Arizona, California, Guam, Hawaii, Idaho, Montana, Nevada, the Northern Mariana Islands, Oregon, and Washington.

[6] Unless otherwise noted, all "Ex." citations are to those documents attached to the Bureau's *Response* at Docket No. 7.

[7] The Bureau codified its Administrative Remedy Program in 28 C.F.R. Part 542, which provides detailed procedures and guidelines for federal prisoners to seek administrative review of any aspect of their confinement.

9

claim concerning execution of a federal sentence the Bureau is properly brought under 28 U.S.C. § 2241. Bennett v. Soto, 850 F.2d 161 (3d Cir. 1988); Gomori v. Arnold, 533 F.2d 871 (3d Cir. 1976). Because Petitioner is challenging the terms (*i.e.*, execution) of his sentence, his habeas petition is properly brought under 28 U.S.C. § 2241.

### D. Exhaustion Of Administrative Remedies

Although 28 U.S.C. § 2241 contains no statutory exhaustion requirement, a federal inmate ordinarily may not bring a petition for writ of habeas corpus in federal court challenging the execution of his sentence until he has exhausted all available administrative remedies. See, e.g., United States v. Wilson, 503 U.S. 329, 334-35 (1992); Moscato v. Federal Bureau of Prisons, 98 F.3d 757 (3d Cir. 1996). Exhaustion promotes the following goals: (1) it allows the appropriate agency to develop a factual record and apply its expertise, which facilitates judicial review; (2) it permits agencies to grant the relief requested and conserves judicial resources; and (3) it provides agencies the opportunity to correct their own errors and fosters administrative autonomy. Muscato, 98 F.3d at 761-62 (citations omitted).

The Bureau argues that the petition should be dismissed because Petitioner failed to pursue his administrative appeal to completion, as he did not appeal the Regional Director's response to the Bureau's General Counsel. See 28 C.F.R. § 542.14. Petitioner counters that his failure to fully exhaust his administrative review should be excused as "futile" because 28 C.F.R. § 550.58(a)(1)(vi)(B) prohibits him from receiving the early release benefit. Therefore, Petitioner argues, the continued pursuit of an administrative appeal would have been pointless and he should not be required to have completed it before asking a federal court to review the regulation's validity. He also argues that the notice that the Bureau sent to inmates following the Ninth Circuit's issuance of Arrington makes clear that only inmates who are currently housed in a Ninth Circuit institution, or who have completed the unit-based portion of a RDAP in a Ninth Circuit institution, have any chance of receiving administrative relief in a circumstance similar to his.

The Court is persuaded by Petitioner's argument. It is supported by the Third Circuit's decision in Woodall v. Federal Bureau of Prisons, 432 F.3d 235 (3d Cir. 2005). In that case, the petitioner, Shawn Woodall, filed a petition for habeas corpus under 28 U.S.C. § 2241 in which he

10

challenged the validity of Bureau regulations that limited an inmate's placement in a community confinement center to the lesser of ten percent of the inmate's total sentence or six months (28 C.F.R. §§ 570.20-21 (2005)). Woodall had not exhausted his administrative remedies. He contended that he was not required to do so because exhaustion would be futile. The district court agreed, stating: "[E]xhaustion of administrative remedies is not required where exhaustion would not promote" the goals of the exhaustion doctrine. Woodall v. Federal Bureau of Prisons, 2005 WL 1705777 * 6 (D.N.J. July 20, 2005) (citing Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998); Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir. 1988)). It then concluded that: "Here, it does not appear that there is any need to develop a factual record. Nor does this matter require application of the agency's particular expertise. Woodall does not challenge the application of the BOP's ten-percent rule to him, but challenges whether the ten-percent rule legally implements the statute pursuant to which it was promulgated. This is a question within the expertise of courts [under Chevron]. Accordingly, the purposes of the exhaustion requirement would not be served by requiring Woodall to exhaust his administrative remedies." Id. In deciding Woodall's appeal, the Third Circuit affirmed the district court's resolution of the exhaustion issue. Woodall, 432 F.3d at 239 n.2. It held that because "the purposes of exhaustion would not be served here by requiring Woodall to exhaust his administrative remedies[,]" he was excused from the exhaustion requirement. Id. (citing Pimentel v. Gonzales, 367 F.Supp.2d 365 (E.D.N.Y. 2005)).

Pursuant to Woodall, this Court concludes that under the circumstances of this case, exhaustion is not required. Petitioner is not challenging the application of the Bureau's regulation to him, but its validity under the APA, which poses legal questions suited for resolution by a federal court, as opposed to the expertise of the Bureau. Additionally, no further factual development is needed, as the basis upon which the Bureau denied Petitioner the early release benefit is clear from the record, and the goals of the exhaustion requirement would not be promoted by requiring Petitioner to have pursued an administrative appeal that would have been denied because of 28 C.F.R. § 550.58(a)(1)(vi)(B)'s applicability to him. Therefore, this Court will proceed to determine the merits of Petitioner's claims.

11

### E. Legal Discussion

Petitioner's first claim can be disposed of quickly. He contends that he is entitled to habeas relief under the Ninth Circuit's decision in Paulsen. That case, however, is not applicable to him because Paulsen dealt with the 1997 interim rule, and Petitioner was denied 18 U.S.C. § 3621(e)(2)(B)'s early release benefit under the finalized rule, which was subject to notice and comment before it was made final on December 22, 2000. Paulsen, 413 F.3d at 1008 (the 1997 interim rule "is invalid" for failure to follow the notice-and-comment requirements of the APA "*as to those persons disqualified by it prior to the issuance of the final rule*."). Therefore, that the 1997 interim rule was not subject to notice and comment has had no impact on Petitioner's eligibility for early release and cannot provide a ground for relief here. See Miller v. Gallegos, 125 Fed.Appx. 934, 936 (10th Cir. 2005) (non precedential); see also Abernathy v. Terrell, 455 F.Supp.2d 1226, 1228-29 (D.Kan. 2006).

In Petitioner's second claim, he contends that his is entitled to habeas relief under the Ninth Circuit's decision in Arrington. In that case, the Ninth Circuit determined that 28 C.F.R. § 550.58(a)(1)(vi)(B) (2000) is invalid because the Bureau failed to articulate in the administrative record sufficient justification for the regulation when it finalized it on December 22, 2000, thereby rendering it arbitrary and capricious in violation of 5 U.S.C. § 706(2)(A) of the APA.[8] Arrington, 516 F.3d at 1112-16. That statute provides that "a reviewing court shall hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

The Ninth Circuit reached its decision in Arrington as follows. If first recognized that under the APA's "arbitrary and capricious" standard set forth at 5 U.S.C. § 706(2)(A), a federal court's scope of review is narrow and deferential. Arrington, 516 F.3d at 1112 (citing Citizens to

---

[8] 18 U.S.C. § 3625, Inapplicability of the Administrative Procedure Act, provides that: "The provisions of sections 554 and 555 and 701 through 706 of title 5, United States Code, do not apply to the making of any determination, decision, or order under this subchapter." 18 U.S.C. § 3625 does not apply to this claim because Petitioner does not challenge the making of any determination, decision, or order; rather, he challenges the Bureau's rulemaking. See Jasperson v. Federal Bureau of Prisons, 460 F.Supp.2d 76, 84 (D.D.C. 2006). The Bureau does not contend otherwise.

12

Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971), *overruled on other grounds by* Califano v. Sanders, 430 U.S. 99, 105 (1977)).  It acknowledged that an agency action is valid "if a reasonable basis exists for [the agency's] decision."  Id. (quoting Kern County Farm Bureau v. Allen, 450 F.3d 1072, 1076 (9th Cir. 2006) (internal quotations and citations omitted)).  The Ninth Circuit next stated that a federal court "may look only to the administrative record to determine whether the agency has articulated a rational basis for its decision."  Id. (citing Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 50 (1983) ("It is well established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself."); SEC v. Chenery Corp., 318 U.S. 80, 87 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based."); SEC v. Chenery Corp., 332 U.S. 194, 196 (1947)).  It noted that "*[p]ost hoc* explanation of agency action by appellate counsel cannot substitute for the agency's own articulation on the basis for its decision."  Id. (citing Fed. Power Comm'n v. Texaco, Inc., 417 U.S. 380, 397 (1974) ("[W]e cannot 'accept appellate counsel's *post hoc* rationalizations for agency action'; for an agency's order must be upheld, if at all, 'on the same basis articulated in the order by the agency itself.'") (quoting Burlington Truck Lines Inc. v. United States, 371 U.S. 156, 168 (1962); Chenery Corp., 332 U.S. at 196).

Next, the Ninth Circuit concluded that the administrative record showed that the Bureau articulated one basis for categorically excluding inmates convicted of felonies involving the possession, carrying, or use of firearms from receiving 18 U.S.C. § 3621(e)(2)(B)'s early release benefit: the need for uniformity in the application of the implementing regulation.  Id. at 1113-14 (citing 65 Fed.Reg. 80747 (Dec. 22, 2000)).  The Ninth Circuit then held that this rationale did not justify the Bureau's action.  Id. at 1114.  It explained:

> A general desire for uniformity provides no explanation for why the Bureau exercised its discretion to achieve consistency through the promulgation of a categorical *exclusion* rule.  The Bureau's stated desire for uniformity could have been accomplished in any number of ways.  For example, the Bureau could have achieved uniformity by categorically *including* prisoners with nonviolent convictions involving firearms, thus making them eligible for early release: a result that would have been entirely consistent with the statute's aim of offering incentives for prisoner participation in residential substance abuse programs.  Instead, it chose to achieve uniformity by categorically *excluding* such prisoners from eligibility.

13

> Although either choice in all likelihood would have withstood judicial scrutiny, the Bureau offered no explanation for why it exercised its discretion to select one rather than the other. The agency's lack of explanation for its choice renders its decision arbitrary and capricious. See, e.g., Burlington Truck Lines, Inc., 371 U.S. at 167 [ ] (striking down action for failure to explain why agency chose one of two available remedies where "[t]here are no findings and no analysis here to justify the choice made, no indication of the basis on which the [agency] exercised its expert discretion").

Id. (emphasis in original).

The Ninth Circuit refused to consider the rationale that the Bureau chose the categorical exclusion because of the increased risk that offenders with convictions involving firearms might pose to the public. Id. at 1113. That public safety rationale, the Ninth Circuit concluded, was not stated in the administrative record, but only was articulated in the Bureau's brief to the Supreme Court in Lopez. Id. (citing Lopez, 531 U.S. at 236 (quoting Brief for Respondents at 30)). The Ninth Circuit held that the public safety rationale "is precisely the type of '*post hoc* rationalization[]' of appellate counsel that we are forbidden to consider in conducting review under the APA." Id. (quoting Burlington Truck Lines, Inc., 371 U.S. at 168). Therefore, the Ninth Circuit concluded, although the public safety rationale could be considered in evaluating the validity of the regulation under Chevron, see Lopez, 531 U.S. at 36-45, it could not be taken into account when evaluating the validity of the regulation under 5 U.S.C. § 706(2)(A) of the APA. Id. at 1113-16.

Despite this reasoning, the APA's "arbitrary and capricious" standard of review is "narrow." A federal court may only "find that an action is arbitrary and capricious if the agency relied on factors other than those intended by Congress, did not consider 'an important aspect' of the issue confronting the agency, provided an explanation for its decision which 'runs counter to the evidence before the agency,' or is entirely implausible." Rite Aid of Pennsylvania, Inc. v. Houstoun, 171 F.3d 842, 853 (3d Cir. 1999) (quoting Motor Vehicle Mfrs. Ass'n of U.S., Inc., 463 U.S. at 43-44). This Court "must 'uphold [an agency's] decision of less than ideal clarity *if the agency's path may reasonably be discerned.*" Id. (quoting Motor Vehicle Mfrs. Ass'n of U.S., Inc., 463 U.S. at 43 (omitting internal citations) (bracket in original) (emphasis added). "[O]n occasion, regulations with no statement of purpose have been upheld where the agency's purpose was considered *obvious and unmistakable*." Citizens to Save Spencer County v. U.S. Environmental Protection Agency,

600 F.2d 844, 884 (D.C.Cir. 1979) (emphasis added). Because none of the requirements for an arbitrary and capricious finding is apparent here, and because the agency's decision is "reasonably discerned," this Court declines to follow the Ninth Circuit ruling in Arrington.

The Bureau's rationale for promulgating 28 C.F.R. § 550.58(a)(1)(vi)(B) withstands the APA's highly deferential standard of review. In its comments in the Federal Register, the Bureau explained that it was amending 28 C.F.R. § 550.58 (1995) in order to address the legal issues raised by the courts of appeals in the litigation that followed the enactment of that regulation and PS 5162.02, so that it could uniformly apply its policies throughout the county. 65 Fed.Reg. 80747-48 (Dec. 22, 2000). That rationale is not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 5 U.S.C. § 706(2)(A).

Moreover, that the Bureau chose the categorical exclusion set forth in 28 C.F.R. § 550.58(a)(1)(vi)(B) because of the increased risk that felons with convictions involving firearms might pose to the public can be reasonably discerned from the administrative record. It is a point that is evident from review of the litigation to which the Bureau referred in the Federal Register. The program statement at the center of that litigation explained that the Bureau originally chose to categorically exclude inmates convicted of drug offense violations who received sentence enhancements for possession of a weapon because the "possession of a dangerous weapon during commission of a drug offense poses a substantial risk that force may be used against persons or property." PS 5162.02, § 9. Also, the legal decisions issued by the courts of appeals in that litigation showed that the Bureau sought to categorically exclude from the early release benefit certain felons who used guns during their offenses because "the BOP equate[s] gun possession and drug dealing with violence." Pelissero, 170 F.3d at 445; see, e.g., Venegas, 126 F.3d at 765 (the Bureau's "determination that a sufficient nexus exists between the offenses at issue and a substantial risk of violence is a valid exercise of discretion[.]"). When the Bureau's effort to categorically exclude such inmates was frustrated by courts of appeals that invalidated its approach, the Bureau amended its regulation so as to achieve the same result through a method that would cure the problems identified by those courts. In sum, the public safety rationale justifying the categorical exclusion of inmates whose current offense is a felon that involved the carrying, possession, or use

of a firearm or other dangerous weapon or explosive was not a "*post hoc*" rationalization, but was evident in the litigation that prompted the amendment to 28 C.F.R. 550.58 (1995) and which the Bureau referenced in the Federal Register.

Additionally, the rationale to support the challenged categorical exclusion also can be reasonably discerned from the other categorical exclusions that the Bureau listed at subparagraphs (iv) and (vi) of the regulation. There, the Bureau set forth the following four additional categories of inmates that the Director has decided, in an exercise of her discretion, to deny the early release benefit to: (1) inmates who have a prior felony misdemeanor conviction for homicide, forcible rape, robbery, or aggravated assault, or child sexual abuse offenses; (2) inmates whose current offense is a felony that has as an element the actual, attempted, or threatened use of physical force against the person or property of another; (3) inmates whose current offense is a felony that by its nature or conduct presented a serious potential risk of physical force against the person or property of another; and, (4) inmates whose current offense is a felony that by its nature or conduct involves sexual abuse offenses committed upon children. 28 U.S.C. § 550.58(a)(1)(iv), (vi)(A), (C)-(D). Each of those categorical exclusions evidence an obvious public safety rationale as a basis for the exclusion, and it is reasonably discernable that the Bureau decided to make the categorical exclusion set forth in 28 U.S.C. § 550.58(a)(1)(vi)(B) because the felons described therein also pose a threat to public safety.

The Court further notes that in the Federal Register the Bureau summarized the comments received from approximately 150 individuals and organizations regarding the 1997 interim rule and issued its response to those comments. 65 Fed.Reg. 80747-48 (Dec. 22, 2000). Notably, there is no indication that any commenter objected to 28 U.S.C. § 550.58(a)(1)(vi)(B) on the basis that there was no public safety rationale to support that categorical exclusion. Nor does it appear that any commenter suggested that uniformity in application could be just as easily achieved by categorically *including* such inmates into 18 U.S.C. § 3621(e)(2)(B)'s early release program. Id. Thus, while the Ninth Circuit in Arrington faulted the Bureau's failure to explain why, in seeking uniformity, it chose to categorically exclude such inmates, it appears that the Bureau did not explain the categorical exclusion because the comments did not pose the need to explain its

16

decision. In any event, this Court finds that the rationale as to why the Bureau chose the categorical exclusion did not require additional explication.

### F. Certificate of Appealability

Section 102 of the Antiterrorism and Effective Death Penalty Act (28 U.S.C. § 2253 (as amended)) codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. Federal prisoner appeals from the denial of a § 2241 habeas corpus proceeding are not governed by the certificate of appealability requirement. United States v. Cepero, 224 F.3d 256, 264-65 (3d Cir. 2000); 28 U.S.C. § 2253(c)(1)(B).

## III. CONCLUSION

For the foregoing reasons, this Court concludes that Petitioner's APA claims have no merit and will deny the Petition for Writ of Habeas Corpus. An appropriate Order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DUANE BAXTER,** | ) | |
| | ) | |
| Petitioner, | ) | **C.A. No. 08-91 Erie** |
| | ) | |
| v. | ) | |
| | ) | **Chief Magistrate Judge Baxter** |
| **WARDEN QUINTANA,** | ) | |
| | ) | |
| Respondent. | ) | |

**O R D E R**

AND NOW, this 4th day of December, 2008;

IT IS HEREBY ORDERED that the petition for writ of habeas corpus is denied. The Clerk of Courts is hereby directed to close this case.

IT IS FURTHER ORDERED that the pending motions are dismissed as moot in light of the Opinion and Order issued this day.

        S/ Susan Paradise Baxter
        SUSAN PARADISE BAXTER
        Chief U.S. Magistrate Judge